| | |
|---|---|
| **DISTRICT COURT, ARAPAHOE COUNTY, COLORADO**<br>7325 S. Potomac St., #100<br>Centennial, CO 80112 | |
| **Plaintiff:**     **HEATHER SPAGNOLIA**<br><br>**v.** | ▲ **COURT USE ONLY** ▲ |
| **Defendants:**   **CHARTER COMMUNICATIONS, INC., BRIAN TRITZ, and SHANNON CHAPMAN** | **Case Number:  2021cv30902**<br><br>**Courtroom: 204** |
| *Attorneys for Plaintiff:*<br>Peter G. Friesen, Atty No. 45501<br>Kevin P. Ahearn, Atty. No. 31051<br>Robyn Levin, Atty No. 52904<br>**LEVIN SITCOFF PC**<br>1512 Larimer Street, Suite 650<br>Denver, CO  80202<br>Phone: (303) 575-9390<br>Fax: (303) 575-9385<br>pgf@levinsitcoff.com<br>kpa@levinsitcoff.com<br>rl@levinsitcoff.com | |
| **SUMMONS** | |

**TO THE ABOVE-NAMED DEFENDANT: CHARTER COMMUNICATIONS, INC.**

     **YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

     If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

EXHIBIT A

The following documents are also served with this summons: Complaint and Jury Demand, Civil Case Cover Sheet, Delay Reduction Order, Division 204 Delay Reduction Order and Order Regarding Plan for Settlement.

Dated this 27th day of May 2021.

Respectfully submitted,

**LEVIN SITCOFF PC**

*s/ Robyn Levin*
Peter G. Friesen
Kevin P. Ahearn
Robyn Levin

2

<table>
<tr><td>

**DISTRICT COURT, ARAPAHOE COUNTY,<br>COLORADO**<br>7325 S. Potomac St., #100<br>Centennial, CO 80112<br><br>**Plaintiff:     HEATHER SPAGNOLIA**<br><br>**v.**<br><br>**Defendants:    CHARTER COMMUNICATIONS,<br>INC., BRIAN TRITZ, and<br>SHANNON CHAPMAN**

</td><td>

▲ **COURT USE ONLY** ▲<br><br>**Case Number:**<br><br>**Division:**

</td></tr>
<tr><td>

*Attorneys for Plaintiff:*<br>Peter G. Friesen, Atty No. 45501<br>Kevin P. Ahearn, Atty. No. 31051<br>Robyn Levin, Atty No. 52904<br>**LEVIN SITCOFF PC**<br>1512 Larimer Street, Suite 650<br>Denver, CO  80202<br>Phone: (303) 575-9390<br>Fax: (303) 575-9385<br>pgf@levinsitcoff.com<br>kpa@levinsitcoff.com<br>rl@levinsitcoff.com

</td><td></td></tr>
</table>

## COMPLAINT AND JURY DEMAND

Plaintiff, Heather Spagnolia, by and through her attorneys, LEVIN SITCOFF PC, hereby submits her Complaint against Defendant, Charter Communications, Inc., Brian Tritz, and Shannon Chapman, and states and alleges as follows:

### INTRODUCTION

1.      This action involves a series of events that resulted in the termination of Plaintiff Heather Spagnolia ("Plaintiff" or "Ms. Spagnolia") from her employment with Defendant Charter Communications, Inc.

2.      Charter told Plaintiff that she was terminated because she recorded a conversation between herself and one of her supervisors, Defendant Brian Tritz, without alerting Defendant Tritz.

3.     Plaintiff made the recording because Defendants Brian Tritz and Shannon Chapman, and Charter Communications ("Charter") more generally, had engaged in a months-long pattern of discriminatory and unfair employment practices related to reasonable accommodations Ms. Spagnolia had requested. The specific conversation Plaintiff recorded was about her opposition to the discriminatory and unfair employment practice of requiring her to clock out during lactation breaks, a policy which Defendant Charter has since admitted was created and implemented specifically to target Plaintiff.

4.     During the months preceding her termination, Ms. Spagnolia was subjected to repeated instances of discrimination, actions aimed at creating a hostile work environment, and adverse actions in response to her requests for reasonable post-pregnancy accommodations.

## JURISDICTION AND VENUE

5.     Plaintiff is, and at all times relevant to this Complaint was, a citizen of Colorado.

6.     Upon information and belief, Defendant Charter Communications is a Connecticut corporation which is authorized to do business in Colorado.

7.     Upon information and belief, Defendant Brian Tritz is a citizen of Colorado.

8.     Upon information and belief, Defendant Shannon Chapman is a citizen of Colorado.

9.     Defendant Charter Communications is an employer as defined by C.R.S. § 24-34-402(3).

10.     Defendants Tritz and Chapman are people who are alleged to have engaged in activity outlined in C.R.S. § 24-34-402(1)(e).

11.     This Court has personal jurisdiction over Defendants because this action arises out of conduct that occurred in the State of Colorado, specifically Defendant's employment and supervision of a Colorado employee in its Colorado office.

12.     Venue is proper in this Court because, among other things, the claims alleged arise out of conduct that occurred, in whole or in part, in Arapahoe County.

13.     On March 21, 2020, an administrative complaint was submitted to Colorado Civil Rights Division ("CCRD") and the Equal Employment Opportunity Commission ("EEOC"). Plaintiff received her right to sue notice from the EEOC on February 24, 2021.  Plaintiff received her right to sue notice from the CCRD on May 11, 2021.

2

## FACTUAL BACKGROUND

14.　　Plaintiff began her employment at Charter in 2015.

15.　　While at Charter, Ms. Spagnolia was a high performing employee.

16.　　On all performance reviews, Ms. Spagnolia was given an overall rating of either met or exceeded expectations.

17.　　In 2015 and 2016, Ms. Spagnolia was rated the number one customer service representative in her department.

18.　　In 2016, Ms. Spagnolia's manager described her as a near perfect model employee in her performance review.

19.　　In October 2017, Ms. Spagnolia gave birth to a son with a cleft lip and palate.

20.　　Her son's medical conditions required multiple surgeries and other medical interventions.

21.　　Ms. Spagnolia requested leave from work to care for her son during her surgeries and, at one point, notified Charter that she would need additional leave to care for him in the future.

22.　　Defendant Chapman, who was both Defendant Tritz and Ms. Spagnolia's superior, discouraged her from using FMLA leave to care for her infant, and due to that chilling conduct, Ms. Spagnolia did not request leave under the FMLA or the ADA when she requested leave to care for her son.

23.　　In August 2018, Ms. Spagnolia was asked by her then-supervisor about an employee who was sleeping during work hours. Shortly thereafter, another supervisor asked Ms. Spagnolia to help catch the employee by sending emails and messages to let management know when the employee was sleeping.

24.　　In early 2019, Ms. Spagnolia advised her supervisor that she was pregnant again.

25.　　The pregnancy was complicated, and Ms. Spagnolia began experiencing high blood pressure, fluid retention, headaches, exhaustion, and pain.

26.　　At the time of her second pregnancy, Ms. Spagnolia was working the night shift at Charter. Ms. Spagnolia was also working at a second job during the daytime, which had more flexible hours.

27.　　During her pregnancy, Ms. Spagnolia requested a schedule change from Charter, so that she could get extra sleep between jobs and have a full day off for rest, which she needed because of her pregnancy complications. Charter did not act on Ms. Spagnolia's request for months, which exacerbated her pregnancy complications.

3

28.     In March 2019, several months after she began requesting the schedule change, Ms. Spagnolia received her 2018 performance review. In a highly unusual move, Defendant Tritz, a supervisor to whom Ms. Spagnolia did not report, had provided input on the review. Defendant Tritz's feedback contradicted positive remarks from Ms. Spagnolia's direct supervisor, Chris Williams. Defendant Tritz recognized that Ms. Spagnolia was an excellent employee, but without any support stated that she "may need to decide if this is the correct role for her."

29.     This was the only time Ms. Spagnolia received negative feedback on her annual review, and it concerned her because it closely followed her pregnancy-related accommodation requests.

30.     In April 2019, Ms. Spagnolia developed pre-eclampsia.

31.     Ms. Spagnolia gave birth to her second son on April 25, 2019, just 28 weeks into her pregnancy. Her son spent two months in the neonatal intensive care unit ("NICU") after birth.

32.     Ms. Spagnolia took ten weeks of FMLA leave after the birth of her son.

33.     Charter denied Ms. Spagnolia's request for an extension of her paid leave.

34.     Ms. Spagnolia returned to work on July 5, 2019, when her son had been home from the NICU for just 12 days.

35.     When Ms. Spagnolia returned to work, she reported directly to Defendant Tritz.

36.     Because Ms. Spagnolia's son was born prematurely, Ms. Spagnolia's medical provider(s) told her it was critical that he be breastfed in order to develop.

37.     When Ms. Spagnolia returned to work, she requested occasional breaks to pump breast milk for her infant.

38.     Ms. Spagnolia's request was not well-received.

39.     In the weeks following her return to work, Ms. Spagnolia was directed to pump in the following locations: a bathroom stall; an office with a glass wall; a locker room accessible to other staff; and a wellness room with a glass wall which was the shared break area for the entire department.

40.     Ms. Spagnolia was never provided with a do not disturb sign, and, in the rooms with glass walls, the walls were not covered when the rooms were being used for lactation.

41.     Charter knew or should have known that Ms. Spagnolia's use of the wellness room would engender resentment from her co-workers, as that was the shared break area for the entire department.

4

42.     Charter's response to Ms. Spagnolia's lactation accommodations requests (i.e., offering only unsanitary and non-private spaces for pumping) caused her stress and anxiety, which led to a decrease in her milk supply, requiring her to supplement her breast milk with formula.

43.     Ms. Spagnolia expressed discomfort with the various pumping rooms to her supervisor(s) on several occasions.

44.     On or around August 2019, Ms. Spagnolia had a one-on-one meeting with her supervisor, Defendant Tritz. The discussion was supposed to be about Ms. Spagnolia's job performance. During the meeting, Defendant Tritz directed Ms. Spagnolia to adjust her pumping breaks so that they would not occur between 11:30 p.m. – 1:30 a.m. or 6:00-7:00 a.m. Ms. Spagnolia later received a message from Defendant Tritz outlining the times he requested that she pump.

45.     It is inadvisable to adjust pumping schedules, since pumping is driven by a baby's feeding schedule and nutrition needs.

46.     Artificially changing a pumping schedule can result in painful engorgement and a decrease in a woman's milk supply.

47.     Ms. Spagnolia, fearing the loss of her job and benefits, avoided pumping during the requested times, resulting in painful engorgement.

48.     Because Ms. Spagnolia moved her pumping breaks at Charter's insistence, she was pumping during times when staff in her department would ordinarily take meal breaks. This engendered resentment from co-workers who ordinarily used the wellness room during meal breaks, which the co-workers expressed to Ms. Spagnolia.

49.     On or around August 3, 2019, just after Ms. Spagnolia finished pumping in the wellness room she noticed an item that was later identified as a webcam in the pumping room. The device was pointing directly at the location in the room where Ms. Spagnolia pumped.

50.     Ms. Spagnolia immediately reported the webcam to the supervisor on duty. Ms. Spagnolia was sickened by the thought of someone recording her while pumping, and used sick leave to go home early.

51.     Ms. Spagnolia was later advised that an investigation would be conducted and that she would be contacted for an interview, but was not otherwise provided with information or assistance despite the major privacy violation she had just undergone at work. Ms. Spagnolia was never contacted for an investigation regarding the webcam until several weeks later, the same week that she was terminated from her employment.

52.     On or around August 16, 2019, Ms. Spagnolia approached Defendant Chapman for an update regarding the webcam investigation. During the same meeting, Ms. Spagnolia again asked about whether there was somewhere private and sanitary she could pump. Defendant

5

Chapman acknowledged that Ms. Spagnolia had been forced to pump in a bathroom, a locker room, and a wellness room where a webcam had been found. Defendant Chapman acknowledged that those locations were not acceptable and suggested that Ms. Spagnolia could pump in Defendant Chapman's office – it is not clear whether the Defendant Chapman intended to be present at those times – or in another office shared by two employees.

53.     Ms. Spagnolia, while uncomfortable, elected to continue using the wellness room because none of the sanitary alternatives offered any greater privacy.

54.     During the same August 16, 2019 meeting, Ms. Spagnolia asked Defendant Chapman why a co-worker with less seniority was reassigned to a desirable shift Ms. Spagnolia had expressed interest in. Historically, available shifts were reassigned based on seniority. Defendant Chapman explained that the deviation from normal procedure was a "thank you" to the other employee for covering Ms. Spagnolia's shifts while she was on FMLA leave. Thus, Ms. Spagnolia understood that she was picked over for the desirable shift because she had taken maternity leave.

55.     On or about August 22, 2019, Defendant Chapman attended a meeting with Ms. Spagnolia and Defendant Tritz regarding the webcam. Defendant Tritz informed Ms. Spagnolia that the webcam investigation was complete and Charter could not identify where it came from. Again, Ms. Spagnolia had never been contacted regarding the investigation.

56.     At the same August 22, 2019 meeting, Ms. Spagnolia was told by both supervisors that she would need to start clocking out to pump.

57.     Ms. Spagnolia was surprised, since non-nursing colleagues were permitted personal breaks without clocking out. For example, a male employee was permitted unlimited paid smoking breaks on each shift.

58.     Clocking out during a shift could detrimentally impact Ms. Spagnolia's productivity rating, which was a performance metric at Charter. It would also affect Ms. Spagnolia's full-time status, which was necessary for her to receive health benefits, which were critical to Ms. Spagnolia given the ongoing medical care needs of both of her sons.

59.     Following the August 22 meeting, Ms. Spagnolia received conflicting information about her pumping breaks. Initially, Defendant Chapman told her that she could have time to adjust her schedule to deal with the new policy, and that it would not affect her productivity rating. Shortly thereafter, Defendant Tritz contradicted Defendant Chapman by reprimanding Ms. Spagnolia for not clocking out to pump, telling her that her time would be adjusted to make sure her break was unpaid, telling her that she would not be allowed to make up her time to avoid loss in pay, and telling her that her productivity reports would be impacted by clocking out to pump.

60.     Ms. Spagnolia understood that the policy change was intended to make her seek other employment, since her supervisors were aware that she needed her benefits given her children's medical conditions.

6

61.     Fearing that the new pumping policy was discriminatory, on August 23, 2019, Ms. Spagnolia approached her supervisor, Defendant Tritz, to discuss his reprimand the day before, and raise her concern that the policy was discriminatory and unfair. Defendant Tritz told her that the policy was a company-wide change being implemented in an effort to standardize policies.

62.     Ms. Spagnolia was concerned that her company and supervisors had been engaging in retaliatory and discriminatory conduct and aware that her previous objections to discriminatory conduct had resulted in retaliation.  Going into the August 23 meeting, Ms. Spagnolia was afraid that discussing her opposition to the new policy could result in additional unfair adverse employment actions, so she recorded her conversation with Defendant Tritz on her cell phone.

63.     As was her right under Colorado's one-party consent law, Ms. Spagnolia did not inform Defendant Tritz that she was recording the conversation on her cell phone.

64.     Later communication from Charter indicated that the policy requiring employees to clock out while pumping was not a company-wide change as Defendant Tritz told Ms. Spagnolia, but rather it was a specific action directed at Ms. Spagnolia, created and implemented to target her.

65.     On August 24, 2019, one day after complaining to Defendant Tritz that the policy change was discriminatory, Ms. Spagnolia was suspended. During her meeting with a Human Resources Representative regarding the suspension, Ms. Spagnolia was asked if she had ever used her cell phone to record a conversation at work. Ms. Spagnolia confirmed that she had.

66.     Prior to the August 24, 2019 meeting Ms. Spagnolia had never been informed that recording a personnel meeting violated any of Charter's policies or practices.

67.     Ms. Spagnolia had recently observed Charter leadership do nothing about the presence of a recording device on company property.

68.     On August 24, 2019, Ms. Spagnolia was abruptly suspended pending an investigation to determine if she violated any of Charter's policies by having recorded a personnel meeting on her cell phone.

69.     The investigation lasted for five days.

70.     Ms. Spagnolia was terminated on August 29, 2019. The justification for termination was the grounds that Ms. Spagnolia's conduct undermined employee morale, thereby violating Charter's Code of Conduct.

### FIRST CLAIM FOR RELIEF
### (Unlawful Pregnancy Discrimination in Violation of CADA)

71.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

72.     At all relevant times, Plaintiff was pregnant or had a condition related to the physical recovery from childbirth.

73.     At all relevant times, Plaintiff was a protected person under the Colorado Anti-Discrimination Act ("CADA").

74.     At all relevant times, Defendant Charter was an employer under CADA.

75.     At all relevant times, Defendants Tritz and Chapman were people engaging in conduct prohibited by CADA.

76.     At all relevant times, Plaintiff performed her job competently and was qualified for her position.

77.     Defendants violated CADA by illegally discriminating against Plaintiff because of her pregnancy and condition related to recovery from childbirth by, among other things, giving her adverse performance reviews, refusing accommodations, offering obviously insufficient accommodations, refusing shift changes, requiring her to take leave in order during lactation breaks, suspending her, and terminating her employment.

78.     Defendants refused to provide reasonable accommodations for Ms. Spagnolia's pregnancy and/or pregnancy related conditions.

79.     Defendants refused Plaintiff employment opportunities based on illegal discrimination.

80.     Defendants required Plaintiff to take leave due to her condition related to recovery from childbirth when they could have offered a reasonable accommodation.

81.     Defendants took adverse actions against Plaintiff due to her condition related to recovery from childbirth.

82.     Defendants terminated Plaintiff's employment based on illegal discrimination.

83.     Defendants' discriminatory conduct was willful and in knowing or reckless disregard of the requirements of CADA.

84.     Plaintiff has sustained significant economic and consequential damages from Defendant's illegal discrimination, including wage and benefit loss, reputational injury, emotional distress, and anxiety.

85.     Plaintiff has exhausted all administrative requirements to pursuing pregnancy and sex discrimination claims against Defendants.

8

## SECOND CLAIM FOR RELIEF
### (Unlawful Gender Discrimination in Violation of CADA)

86.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

87.     At all relevant times, Plaintiff was a protected person under the Colorado Anti-Discrimination Act ("CADA") based on her gender.

88.     At all relevant times, Defendant Charter was an employer under CADA.

89.     At all relevant times, Defendants Tritz and Chapman were people engaging in conduct prohibited by CADA.

90.     At all relevant times, Plaintiff performed her job competently and was qualified for her position.

91.     Defendants violated CADA by illegally discriminating against Plaintiff because of her sex, pregnancy, and condition related to recovery from childbirth by, among other things, giving her adverse performance reviews, refusing accommodations, offering obviously insufficient accommodations, refusing shift changes, requiring her to take leave in order during lactation breaks, suspending her, and terminating her employment.

92.     Defendants refused to provide reasonable accommodations for Ms. Spagnolia's pregnancy and/or pregnancy related conditions.

93.     Defendants refused Plaintiff employment opportunities based on illegal discrimination.

94.     Defendants required Plaintiff to take leave due to her condition related to recovery from childbirth when it could have offered a reasonable accommodation.

95.     Defendants took adverse actions against Plaintiff due to her sex.

96.     Defendants terminated Plaintiff's employment based on illegal discrimination.

97.     Defendants' discriminatory conduct was willful and in knowing or reckless disregard of the requirements of CADA.

98.     Plaintiff has sustained significant economic and consequential damages from Defendants' illegal discrimination, including wage and benefit loss, reputational injury, emotional distress, and anxiety.

99.     Plaintiff has exhausted all administrative requirements to pursuing pregnancy and sex discrimination claims against Defendants.

9

## THIRD CLAIM FOR RELIEF
### (Failure to Accommodate in Violation of CADA)

100.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

101.    At all relevant times, Plaintiff was pregnant or had a condition related to the physical recovery from childbirth.

102.    At all relevant times, Plaintiff was a protected person under the Colorado Anti-Discrimination Act ("CADA").

103.    At all relevant times, Defendant Charter was an employer under the CADA.

104.    At all relevant times, Defendants Tritz and Chapman were people engaging in conduct prohibited by CADA.

105.    At all relevant times, Plaintiff performed her job competently and was qualified for her position.

106.    Defendants violated CADA by illegally refusing to provide Plaintiff's requested reasonable accommodations for Plaintiff's condition related to the physical recovery from childbirth, including but not limited to refusing additional or extended breaks to pump breastmilk.

107.    Defendants' unlawful conduct was willful and in knowing or reckless disregard of the requirements of CADA.

108.    Plaintiff has sustained significant economic and consequential damages from Defendants' illegal discrimination, including wage and benefit loss, reputational injury, emotional distress, and anxiety.

109.    Plaintiff has exhausted all administrative requirements to pursuing pregnancy and sex discrimination claims against Defendants.

## FOURTH CLAIM FOR RELIEF
### (Retaliation based on Opposition to Discrimination in Violation of CADA)

110.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

111.    At all relevant times, Plaintiff was pregnant or had a condition related to the physical recovery from childbirth.

112.    At all relevant times, Plaintiff was a protected person under the Colorado Anti-Discrimination Act ("CADA").

113.    At all relevant times, Defendant was an employer under CADA.

10

114.    At all relevant times, Defendants Tritz and Chapman were people engaging in conduct prohibited by CADA.

115.    At all relevant times, Plaintiff performed her job competently and was qualified for her position.

116.    Plaintiff engaged in protected conduct when she voiced opposition to discriminatory conduct.

117.    Plaintiff engaged in protected conduct when she recorded a conversation with a supervisor during which she was opposing discriminatory and unfair employment practices.

118.    Defendants violated CADA by retaliating against her for engaging in protected conduct by opposing her employer's discriminatory and unfair employment practices.

119.    Defendant Charter violated CADA by retaliating against her for engaging in protected conduct by recording a conversation with a supervisor regarding the employer's discriminatory and unfair employment practices.

120.    Defendants violated CADA by retaliating against Ms. Spagnolia for voicing opposition to discriminatory conduct and failures to accommodate.

121.    Defendants' unlawful conduct was willful and in knowing or reckless disregard of the requirements of CADA.

122.    Plaintiff has sustained significant economic and consequential damages from Defendant's illegal discrimination, including wage and benefit loss, reputational injury, emotional distress, and anxiety.

123.    Plaintiff has exhausted all administrative requirements to pursuing pregnancy and sex discrimination claims against Defendants.

## FIFTH CLAIM FOR RELIEF
### (Termination in Violation of Public Policy)

124.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

125.    At all relevant times, Plaintiff was pregnant or had a condition related to the physical recovery from childbirth.

126.    Plaintiff, as a woman, was a member of a protected class.

127.    Plaintiff's employment was terminated because she engaged in protected conduct, in retaliation for requests for reasonable accommodation related to her pregnancy.

128.   Defendant Charter's actions are in violation of C.R.S. § 24-34-402, section 85.1(b) of the Colorado Civil Rights Commission Sex Discrimination Rules, 3 C.C.R. 708-1, and article II, section 29, of the Colorado Constitution (the equal rights amendment).

129.   Plaintiff has sustained significant economic and consequential damages from Defendant's illegal discrimination, including wage and benefit loss, reputational injury, emotional distress, and anxiety.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against each of the Defendants and award him all relief allowed by law, including but not limited to the following:

(a) All appropriate relief including injunctive relief at law and equity;

(b) Compensatory and consequential damages on all claims allowed by law in an amount determined at trial;

(c) Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

(d) Pre- and post-judgment interest at the appropriate lawful rate; and

(e) Any further relief that this court deems just and proper, and any other relief as allowed by law.

## PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

Dated this 24th day of May 2021.

Respectfully submitted,

LEVIN SITCOFF PC

*s/ Robyn Levin*
Peter G. Friesen
Kevin P. Ahearn
Robyn Levin

**Plaintiff's Address:**
38118 Licorice Trial
Castle Rock, CO 80109

12

<table>
<tr><td>

**DISTRICT COURT, ARAPAHOE COUNTY, COLORADO**
7325 S. Potomac St., #100
Centennial, CO 80112

</td><td></td></tr>
</table>

| | |
|---|---|
| **DISTRICT COURT, ARAPAHOE COUNTY, COLORADO**<br>7325 S. Potomac St., #100<br>Centennial, CO 80112<br><br>**Plaintiff:**   **HEATHER SPAGNOLIA**<br><br>**v.**<br><br>**Defendants:**   **CHARTER COMMUNICATIONS, INC., BRIAN TRITZ, and SHANNON CHAPMAN**<br><br>*Attorneys for Plaintiff:*<br>Peter G. Friesen, Atty No. 45501<br>Kevin P. Ahearn, Atty. No. 31051<br>Robyn Levin, Atty No. 52904<br>**LEVIN SITCOFF PC**<br>1512 Larimer Street, Suite 650<br>Denver, CO 80202<br>Phone: (303) 575-9390<br>Fax: (303) 575-9385<br>pgf@levinsitcoff.com<br>kpa@levinsitcoff.com<br>rl@levinsitcoff.com | ▲ **COURT USE ONLY** ▲<br><br>**Case Number:**<br><br>**Division:** |
| **DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD-PARTY COMPLAINT** | |

   1.   This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

   2.   Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

   ☐   This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

☒      This party is seeking a monetary judgment against another party for more than $100,000.00, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:

By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000.

**Or**

☐      Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3.   ☒      This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

Dated this 24th day of May 2021.

Respectfully submitted,

**LEVIN SITCOFF PC**

*s/ Robyn Levin*
Peter G. Friesen
Kevin P. Ahearn
Robyn Levin

2

DISTRICT COURT, ARAPAHOE COUNTY,
STATE OF COLORADO
7325 South Potomac Street
Centennial, Colorado 80112

DATE FILED: May 24, 2021 3:22 PM
CASE NUMBER: 2021CV30902

Plaintiff(s): Spagnolia, Heather

v.

Defendant(s): Charter Communications Inc et al

▲ **COURT USE ONLY** ▲

Case Number:   2021CV30902
Div. 204

**DELAY REDUCTION ORDER**
(FOR CASES FILED ON OR AFTER JULY 1, 2015)

This Court is on a delay reduction docket.

A.   For all civil actions, the following deadlines must be met:

　　1.   Service of Process:  Returns of service on all defendants shall be filed within **63 days** after the date of the filing of the complaint.

　　2.   Default Judgment:  Application for default judgment shall be filed within **35 days** after default has occurred.

　　3.   Case Management:   Whether a Case Management Conference is required is determined by each Division.

　　4.   Trial Setting: Parties shall comply with the procedure for setting trial as determined by the Judge presiding over the Division to which the case has been assigned.

　　　　a.   Actions governed by C.R.C.P. 16 shall be set for trial within **49 days** of the "at issue" date and generally trial will be set within **1 year** of the date the Complaint was filed unless the Court determines that the nature of the case requires a later setting.

　　　　b.   Actions governed by C.R.C.P. 16.1 shall be set for trial within **42 days** of the "at issue" date and generally trial will be set within **6 months** of the date the Complaint was filed unless the Court determines that the nature of the case requires a later setting.

B.   A District Court Civil Cover Sheet (JDF 601) shall be filed with all civil complaints.

C.   Plaintiff shall send a copy of this Order to all other parties who enter an appearance and shall file a certificate of mailing within 14 days following the entry of appearance.

D.   Any attorney entering an appearance in this case who is aware of a related case is ordered to complete and file in this case a document entitled "Information Regarding Case(s)" informing the Court of the related case(s) and stating whether consolidation is appropriate.

E.   If an attorney or self-represented party failed to comply with the Order, the Court may dismiss the case without prejudice.

Date:   May 24, 2021

BY THE COURT:
ASSIGNED JUDGE

<table>
<tr><td>

ARAPAHOE COUNTY COMBINED COURTS
DISTRICT COURT, ARAPAHOE COUNTY,
COLORADO
7325 South Potomac Street
Centennial, Colorado 80112

</td><td>

DATE FILED: May 24, 2021 4:15 PM
CASE NUMBER: 2021CV30902

</td></tr>
</table>

|  |  |
|---|---|
| **Plaintiffs:** HEATHER SPAGNOLIA<br><br>v.<br><br>**Defendants:** CHARTER COMMUNICATIONS, INC.,<br>BRIAN TRITZ, and SHANNON CHAPMAN | ▲  **COURT USE ONLY**  ▲ |
|  | **Case No: 2021CV30902**<br><br>**Courtroom:  204** |

### DIVISION 204 DELAY REDUCTION ORDER AND ORDER REGARDING PLAN FOR SETTLEMENT

All civil courtrooms are on a delay reduction docket and the Clerk's office automatically generates a "Delay Reduction Order/Order – Case Management". If there are any differences between that document and this Order, the Division 204 Delay Reduction Order shall control.

**IF AN ATTORNEY OR *PRO SE* PARTY FAILS TO COMPLY WITH THIS ORDER, THE COURT MAY DISMISS THE CASE WITHOUT PREJUDICE. THIS ORDER IS THE INITIAL NOTICE REQUIRED BY C.R.C.P 121 § 1-10, AND C.R.C.P. 41(b)(2).**

In all civil actions, the following deadlines must be met:

**Service of Process:** Proof of service of process under C.R.C.P. 4 for all defendants must be filed within **63 days** after the date of filing of the complaint. After **63 days**, the action may be dismissed by the Court against any defendant for whom proof of service has not been filed.

**Replevin and FED Cases**: In any replevin or FED matter, proof of service on Defendant(s) must be filed at least 48 hours PRIOR to a scheduled hearing on possession. If proof of service is not filed at least 48 hours prior to the hearing, the hearing is subject to being vacated and reset.

**Default:** Application for entry of default under C.R.C.P. 55(a) must be filed within **14 days** after default has occurred.

If all defendants are in default, a motion for entry of default judgment under C.R.C.P. 55(b) must be filed with the application for entry of default. Motions for entry of default judgment must comply with C.R.C.P. 121 § 1-14. Reasonable inquiry regarding a person's military status requires confirmation through the Department of Defense's Servicemembers Civil Relief Act website (https://scra.dmdc.osd.mil) or equivalent confirmation.

**Trial Setting for All Cases:** The Responsible Attorney as defined in C.R.C.P. 16(b)(2) must file and serve a Notice to Set the case for trial and must complete the setting of the trial no later than **28 days from the date the case is at issue**. (Note: this is a shorter timeframe than would otherwise be required by C.R.C.P. 16.1(g)). A case is "at issue" when: (a) all parties have been served and have filed all pleadings permitted by C.R.C.P. 7; or (b) defaults or dismissal have been entered against all non-appearing parties; or (c) at such other time as the Court directs.

Trial settings may only be obtained Wednesdays between the hours of 10:00 a.m. and 12:00p.m or Thursdays between the hours of 10:00 a.m. and 12:00 p.m. and only upon the filing of a Notice to Set. No case will be set for more than 7 days without prior approval of the Court. No case will be set beyond one year after the case is filed without prior approval of the Court. **The Court adheres to the provisions of Chief Justice Directive (CJD) 08-08 which requires that 90% of all civil actions filed shall be concluded within one year of filing.**

Cases filed under **C.R.C.P. 16:**

**Case Management Conference:** A Case Management Conference will not be set so long as there are no disputed issues as to the Case Management Order. Pursuant to C.R.C.P. 16(d)(3), all parties represented by counsel may, no later than **28 days** from the date the case is at issue, file a proposed Case Management Order in compliance with C.R.C.P. 16(b) for the Court to review. The parties must file, in editable format, a proposed Case Management Order consisting of the matters set forth in C.R.C.P. 16(b)(1)-(17) and take all necessary actions to comply with those subsections. The Court will grant the Case Management Conference as long as there are no disputed issues as to the Case Management Order. Note that this required timeframe to file a proposed Case Management Order is the same as required for the filing of the Notice to Set Trial, as this allows parties to set all trial dates by making only one phone call to the Division 204 Clerk.

**Case Management Conference:** The Court may set a Case Management Conference at its discretion.

Cases filed under **C.R.C.P. 16.1:**

**Certificate of Compliance:** Not later than **49 days** after the case is at issue, the Plaintiff (or the Responsible Attorney) must file a Certificate of Compliance as required under C.R.C.P. 16.1(h). No Case Management Order or Case Management Conference is required.

Additionally, in all civil actions, the following provisions apply:

**Service of this Order:** The Plaintiff or Responsible Attorney must send a copy of this order to all other parties who enter an appearance and shall file a certificate of mailing within 14 days following the entry of appearance.

2

**Related Cases:**  An attorney entering an appearance in this case who is aware of a related case is ordered to complete and file in this case an Information Regarding Related Case(s) informing the Court of the related case(s) and stating whether consolidation is appropriate.

## ORDER REGARDING PLAN FOR SETTLEMENT PURSUANT TO C.R.C.P. 16(b)(7) and C.R.S. § 13-22-311, 313

1.  This Order applies to all civil cases filed at this Court.

2.  No later than 35 days after the case is at issue, the parties shall explore the possibility of a prompt settlement or resolution of the case.

3.  No later than 42 days after the case is at issue, the parties shall submit a document entitled "Stipulated Plan Regarding Settlement" setting forth their plans for future efforts to settle the case to the Court. Unless notified otherwise by the Court, the Stipulated Plan Regarding Settlement is automatically adopted as an Order of the Court.

The Stipulated Plan Regarding Settlement (ADR Plan) must include the following:

   a.  Specification of the selected form of ADR. The parties may select any form of ADR defined in C.R.S. § 13-22-302.

   b.  Designation of a provider who has been contacted and has agreed to provide ADR services to the parties. The parties may select any provider available in the community including Office of Dispute Resolution (ODR). ODR offers moderately priced mediation and other ADR services. ODR can be scheduled at www.ColoradoODR.org or call 720-625-5940.

4.  If no stipulated plan is submitted within 42 days of the case being at issue, the Court-ordered plan shall be that the parties must participate in mediation with ODR no later than 63 days prior to the trial date.

5.  Failure to comply with this Order may result in sanctions including, but not limited to, loss of trial date.

6.  The parties must certify in the proposed Trial Management Order (due 7 days before the date of Pre-Trial Conference) that they have complied with the Stipulated Plan Regarding Settlement or with ODR pursuant to paragraph 3 above.

7.  Plaintiff shall send a copy of this Order to all other parties who enter an appearance and shall file a certificate of mailing within 14 days following the entry of appearance.

**If an attorney or pro se party fails to comply with this Order, the Court may dismiss the case without prejudice.**

3

Date:   May 24, 2021

BY THE COURT:

_____

John E. Scipione
District Court Judge

4

DISTRICT COURT, ARAPAHOE COUNTY,
STATE OF COLORADO
7325 S. Potomac St., #100
Centennial, Colorado 80112

DATE FILED: June 22, 2021 3:05 PM
FILING ID: F58825CBD9E28
CASE NUMBER: 2021CV30902

Heather Spagnolia,

　　　　Plaintiff

v.

Charter Communications, Inc., Brian Tritz,
and Shannon Chapman.

　　　　Defendants.

▲COURT USE ONLY ▲

*Attorney for Defendant Charter Communications, Inc.*
Jon J. Olafson, Atty. Reg. No.: 43504
LEWIS BRISBOIS BISGAARD & SMITH LLP
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
Phone:　　303.861.7760
Fax:　　　303.861.7767
E-mail:　Jon.Olafson@lewisbrisbois.com

Case Number: 2021cv30902

Courtroom:

## ENTRY OF APPEARANCE OF JON J. OLAFSON

COMES NOW Jon J. Olafson, of the law office of Lewis Brisbois Bisgaard & Smith, LLP, and hereby enters his appearance on behalf of Defendant, Charter Communications, Inc.

Respectfully submitted this 22nd day of June, 2021.

LEWIS BRISBOIS BISGAARD & SMITH LLP
Original signature on file at Lewis Brisbois Bisgaard & Smith
LLP, pursuant to C.R.C.P. 121 § 1-26

*s/ Jon J. Olafson*
Jon J. Olafson, Atty. Reg. No. 43504
LEWIS BRISBOIS BISGAARD & SMITH LLP
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
Tel:　(303) 861.7760
Email:　Jon.Olafson@lewisbrisbois.com

*Attorney for Defendant Charter Communications, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of June, 2021, a true and correct copy of this **ENTRY OF APPEARANCE OF JON J. OLAFSON** was filed and served electronically via ICCES, the Integrated Colorado Courts E-filing System, as follows:

Peter G. Friesen
Kevin P. Ahearn
Robyn Levin
LEVIN SITCOFF PC
1512 Larimer Street, Suite 650
Denver, CO 80202
pgf@levinsitcoff.com
kpa@levinsitcoff.com
rl@levinsitcoff.com

*s/ Suzanne M.  Neel*
*A duly signed original is on file at the Law Offices*
*of LEWIS BRISBOIS BISGAARD & SMITH LLP*

| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, STATE OF COLORADO<br>7325 S. Potomac St., #100<br>Centennial, Colorado 80112 | DATE FILED: June 22, 2021 3:17 PM<br>FILING ID: CFC92E56B2747<br>CASE NUMBER: 2021CV30902 |
| Heather Spagnolia,<br><br>    Plaintiff<br><br>v.<br><br>Charter Communications, Inc., Brian Tritz,<br>and Shannon Chapman.<br><br>    Defendants. | ▲COURT USE ONLY ▲<br>———————————<br>Case Number: 2021cv30902 |
| *Attorney for Defendant Charter Communications, Inc.*<br>Jon J. Olafson, Atty. Reg. No.: 43504<br>LEWIS BRISBOIS BISGAARD & SMITH LLP<br>1700 Lincoln Street, Suite 4000<br>Denver, Colorado 80203<br>Phone:    303.861.7760<br>Fax:    303.861.7767<br>E-mail:  Jon.Olafson@lewisbrisbois.com | Courtroom: |

## DEFENDANT CHARTER COMMUNICATIONS, INC.'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE ANSWER OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT

Defendant Charter Communications, Inc. ("Charter"), by and through its counsel, Lewis Brisbois Bisgaard & Smith, LLP, files this Motion for Extension of Time to Answer or Otherwise Respond to Plaintiff's Complaint (the "Complaint"). In support of the Motion, Charter states as follows:

### CERTIFICATE PURSUANT TO C.R.C.P. 121 § 1-15(8)

Charter's counsel has conferred with counsel for Plaintiff with regard to the relief requested in this Motion. Plaintiff does not oppose Charter's request for an extension of time to respond to the Complaint.

## MOTION FOR EXTENSION OF TIME

1.      Charter was served with the Summons and Complaint in the above captioned matter on Tuesday, June 1, 2021.

2.      Pursuant to C.R.C.P. 12(a)(1), Charter is required to answer or otherwise respond to the Complaint on or before Tuesday, June 22, 2021.

3.      Charter respectfully requests a fourteen-day extension of time in which to answer or otherwise respond to the Complaint, up to and including Tuesday, July 6, 2021.

4.      The requested extension is warranted and timely.  The deadline to answer or to otherwise respond has not passed.

5.      Good cause exists for this extension.  Charter is an out-of-state corporation and diligently pursued its options for local representation in this matter. Charter promptly retained undersigned counsel on Monday, June 21, 2021.

6.      Given the recent retention of undersigned counsel, Charter requires additional time to review and investigate the allegations and draft its response to the Complaint.

7.      The requested extension will not be prejudicial as it will not impact other deadlines for this case, given that no other deadlines have yet been set for this matter and not all parties have been served.  Indeed, Plaintiff does not oppose this motion.

8.      Finally, this Motion is Charter's first request for an extension of time to answer or otherwise respond to the Complaint.

WHEREFORE, Charter respectfully moves this Court for an extension of time, up to and including Tuesday, July 6, 2021, to file an answer or otherwise respond to the Complaint.

Respectfully submitted this 22nd day of June, 2021.

LEWIS BRISBOIS BISGAARD & SMITH LLP
Original signature on file at Lewis Brisbois Bisgaard & Smith
LLP, pursuant to C.R.C.P. 121 § 1-26

*s/ Jon J. Olafson*
Jon J. Olafson, Atty. Reg. No. 43504
LEWIS BRISBOIS BISGAARD & SMITH LLP
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
Tel:  (303) 861.7760
Email:  Jon.Olafson@lewisbrisbois.com

*Attorney for Defendant Charter Communications, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of June, 2021, a true and correct copy of this **DEFENDANT CHARTER COMMUNICATION, INC.'S UNOPPOSED MOTION  FOR EXTENSION OF TIME TO FILE ANSWER OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT** was filed and served electronically via ICCES, the Integrated Colorado Courts E-filing System, as follows:

Peter G. Friesen
Kevin P. Ahearn
Robyn Levin
LEVIN SITCOFF PC
1512 Larimer Street, Suite 650
Denver, CO 80202
pgf@levinsitcoff.com
kpa@levinsitcoff.com
rl@levinsitcoff.com

*s/ Suzanne M. Neel*
*A duly signed original is on file at the Law Offices of LEWIS BRISBOIS BISGAARD & SMITH LLP*

3

| DISTRICT COURT, ARAPAHOE COUNTY, STATE OF COLORADO 7325 S. Potomac St., #100 Centennial, Colorado 80112 | DATE FILED: June 22, 2021 3:17 PM FILING ID: CFC92E56B2747 CASE NUMBER: 2021CV30902 |
|---|---|
| Heather Spagnolia, Plaintiff v. Charter Communications, Inc., Brian Tritz, and Shannon Chapman. Defendants. | ▲COURT USE ONLY ▲ |
| | Case Number: 2021cv30902 Courtroom: |

**[PROPOSED] ORDER REGARDING DEFENDANT CHARTER COMMUNICATIONS, INC.'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE ANSWER OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT**

THIS MATTER comes before the Court on Defendant Charter Communications, Inc.'s ("Charter") Unopposed Motion for an Extension of Time to File or Otherwise Respond to Plaintiff's Complaint.

The Court, having considered Charter's Motion, being fully advised in the premises, and for good cause shown:

HEREBY ORDERS that Charter's deadline to answer or otherwise respond to Plaintiff's Complaint is extended by two weeks.  Charter shall now answer or otherwise respond to the Complaint before or on July 6, 2021.

ENTERED this ___ day of June, 2021.

_____
Judge

| DISTRICT COURT, ARAPAHOE COUNTY, STATE OF COLORADO<br>7325 S. Potomac St., #100<br>Centennial, Colorado 80112 | **SO ORDERED BY COURT**<br>**06/22/2021**<br>DATE FILED: June 22, 2021 3:45 PM<br>CASE NUMBER: 2021CV30902 |
|---|---|
| Heather Spagnolia,<br><br>            Plaintiff<br><br>v.<br><br>Charter Communications, Inc., Brian Tritz, and Shannon Chapman.<br><br>            Defendants. | **JOHN E SCIPIONE**<br>**District Court Judge**<br><br><br>▲COURT USE ONLY ▲<br>_____<br><br>Case Number: 2021cv30902<br><br>Courtroom: |

**[PROPOSED] ORDER REGARDING DEFENDANT CHARTER COMMUNICATIONS, INC.'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE ANSWER OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT**

THIS MATTER comes before the Court on Defendant Charter Communications, Inc.'s ("Charter") Unopposed Motion for an Extension of Time to File or Otherwise Respond to Plaintiff's Complaint.

The Court, having considered Charter's Motion, being fully advised in the premises, and for good cause shown:

HEREBY ORDERS that Charter's deadline to answer or otherwise respond to Plaintiff's Complaint is extended by two weeks.  Charter shall now answer or otherwise respond to the Complaint before or on July 6, 2021.

ENTERED this ___ day of June, 2021.

_____
Judge

| **CHARGE OF DISCRIMINATION** | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ CCRD ■ EEOC | **CHARGE NUMBER:** 541-2020-01481 |

Colorado Civil Rights Division and EEOC

| Name (Indicate Mr., Ms., Mrs.) Ms. Heather Spagnolia | Home Phone No. (Incl Area Code) (661) 210-7449 | Date of Birth 9/18/1990 |
|---|---|---|

| Street Address 3818 Licorice Trail | City, State and ZIP Code Castle Rock, CO 80109 | |
|---|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS BELOW.)

| Name Charter Communications, Inc. | No. Employees, Members 95,000 | Phone No. (Include Area Code) (203) 905-7801 |
|---|---|---|

| Street Address 400 Atlantic Street | City, State and ZIP Code Stamford, CT 06901 | |
|---|---|---|

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☒ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                Latest
                        August 29, 2019
☐ Continuing Action

THE PARTICULARS ARE: (If additional paper is needed, attach extra sheet(s)):

I, Heather Spagnolia, on behalf of myself and all others similarly situated, allege the following:

**I. Personal Harm:** I was employed by Charter Communications, Inc. ("Charter") for approximately 4-½ years until my discriminatory and retaliatory termination on August 29, 2019 after I gave birth to a premature baby boy and requested lactation accommodations, and after I notified Charter that my other child needed surgery for cleft palate. I have suffered substantial economic and non-economic damages because of Charter's discrimination and/or retaliation against me. My damages are ongoing.

**II. Discrimination Statement:** I believe that I was discriminated and retaliated against by Charter because of my sex, my pregnancy and/or my related medical condition (lactation); my requests for lactation-related accommodations; and/or because of my association with my disabled children, all in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the Pregnancy Discrimination Act amendments to Title VII, 42 U.S.C. § 2000e(k) ("PDA"); the Colorado Anti-Discrimination Act, C.R.S. §§ 24-34-301, *et seq.* ("CADA"); the Pregnant Workers Fairness Act amendments to CADA, C.R.S. §§ 24-34-402.3 ("PWFA"); and/or the Americans With Disabilities Act, as amended, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), as follows:

A. I was employed by Charter from 2015 until August 29, 2019. I relocated from Texas to Colorado in March 2017 for a Regional Operations Center ("ROC") Specialist position with the company, which I held for the rest of my employment. I consistently performed my job duties at least satisfactorily or better.

B. In October 2017, I gave birth to a baby with cleft palate. He has required a lot of medical treatment for his condition, including multiple surgeries. I requested modest leave from work to care for him when he had surgery in February and August 2018. I also advised Charter that he would need more surgeries over the next few years until he was around five years old.

C. In November 2018, I learned I was pregnant again. I had a very difficult pregnancy. In the fall of 2018, I asked for permission to change my shifts to 5 8-hour shifts rather than 4 10-hour shifts due to my difficult pregnancy. Although Charter granted my request, my shifts were not changed for several months. Then, right after my shifts were finally switched, I received a performance review with negative feedback in it from a Charter supervisor that I did not work for, which in my experience was highly unusual.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
|---|---|
| I declare under penalty of perjury that the above is true and correct. 2/20/2020 _____ Date   _____ Charging Party Signature | NOTARY – When necessary for State and Local Agency Requirements SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, date, year) MIRIAM ANNE CAFARCHIA NOTARY PUBLIC STATE OF COLORADO NOTARY ID 20124040582 MY COMMISSION EXPIRES JULY 26, 2020 |

EXHIBIT B

| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act<br>Statement and other information before completing this form. | Charge Presented To:   Agency(ies) Charge No(s):<br>**CHARGE NUMBER:**<br><br>☐ CCRD<br>■ EEOC |
|---|---|
| Colorado Civil Rights Division and EEOC<br>Charging Party – Heather Spagnolia | |

D. My baby was born prematurely on April 23, 2019 (at just 28 weeks) after I developed preeclampsia. Charter gave me 10 weeks of leave (the first 8 weeks were considered short-term disability and FMLA leave and the last 2 weeks were considered paid parental leave). I asked to extend my leave beyond my July 5, 2019 to care for my baby (who had only been out of the neonatal intensive care unit for about 12 days at that time). Charter denied my request. When I returned from maternity leave, I was told to begin reporting to the Charter supervisor that gave negative feedback on my review in March 2019.

E. Because my baby was born prematurely, doctors said I should breastfeed my baby exclusively to help with his healthy development. My new supervisor seemed frustrated by my request for breaks to pump and made it difficult for me to do so. I was not given a private, sanitary space to pump and was told to limit my pumping breaks to specific hours when the pumping space was often occupied. A male colleague also complained about my breaks.

F. One day in August 2019, I noticed what looked like a recording device sitting on a table across from where I was pumping, pointing directly at me. I was very concerned and upset by this. I notified the supervisor and was told an investigation would be launched, but nothing ever came of it.

G. I complained to the department manager around August 16, 2019 about the problems I was having and asked what was being done about the recording device. She basically said she knew about the issues I was having and they were investigating the webcam issue. She did not address my other concerns other than to say if I was "freaked out" I could pump in an office that two other employees share on a "first come first serve" basis. When I asked why a co-worker had been given a shift that I was interested in without the normal bidding process, she said it was a "thank you" to that employee for covering for me while I was on maternity leave.

H. The very next week, on August 22, 2019, the department manager told me that there was a new policy that I had to start clocking out to pump. She said the policy change was nothing personal against me (even though Charter later admitted to the Colorado Department of Labor that it was and that they took this action because they thought I was "abusing" my pumping breaks). She said I could take time to figure out how to restructure my schedule (i.e., combine breaks, extend my workday, etc.). However, the very next day, my supervisor confronted me about not clocking out to pump and told me he was going to adjust my time records so I would not be paid for my pumping break. He also said my productivity metrics would be negatively impacted by my pumping breaks. I complained to him later that day that I felt like I was being punished for having a baby. I recorded my conversation with him on my cell phone because I was very concerned about the discrimination and retaliation I was experiencing at work.

I. The very next day, I was pulled into a meeting and informed that I was being suspended pending an investigation into whether my recording of that conversation violated any of Charter's policies. Five days later, I was advised that I had violated company policy by recording that conversation and I was fired. I was not afforded any progressive discipline. Upon information and belief, a male colleague recorded something at work and Charter was made aware of it. He was not fired or even disciplined for it.

J. I believe that the real reason I was suspended and ultimately terminated is because of my sex/pregnancy/related medical condition (lactation); my requests for lactation accommodations; and/or because of my association with my disabled children in violation of Title VII, CADA, and/or the ADAAA.

**II.** As a result of Charter's discrimination and retaliation against me, I have suffered and will continue to suffer significant economic damages.

**III.** I want this Charge filed on behalf of myself and all others similarly situated.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>*Heather Spagnolia* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>*2/20/2020*<br>Date          Charging Party Signature | NOTARY – When necessary for State and Local Agency Requirements<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, date, year)<br><br>MIRIAM ANNE CAPARCHIA<br>NOTARY PUBLIC<br>STATE OF COLORADO<br>NOTARY ID 20124040532<br>MY COMMISSION EXPIRES JULY 25, 2020 |



**COLORADO**
Department of
Regulatory Agencies
Colorado Civil Rights Division

1560 Broadway Street, Suite 825
Denver, CO 80202

Heather Spagnolia
℅ Levin Sitcoff
Robyn Levin
1512 Larimer Street, Suite 650
Denver, CO 80202
rl@levinsitcoff.com

Re:  Spagnolia vs. Charter Communications, Inc.

## NOTICE OF RIGHT TO SUE

Dear Ms. Spagnolia,

A Notice of Right to Sue was issued by the Equal Employment Opportunity Commission (EEOC) on February 24, 2021, with regard to the above-referenced matter (EEOC #541-2020-01418C). The EEOC and the Colorado Civil Rights Division (CCRD) operate pursuant to a work-sharing agreement, in which both agencies retain jurisdiction, but only one conducts the initial processing of the charge of discrimination (COD).  As such, this serves as notification that the CCRD has similarly concluded the processing of your COD.  If you wish to file a civil action in a court of competent jurisdiction, based upon the allegations in your COD, you must do so within 90 days of the date of this notification.

On Behalf of the Colorado Civil Rights Division

/s/Traci M Gren                              5/11/2021
Aubrey Elenis, Director                  Date
Or Authorized Designee

c:   Charter Communications (Respondent) Sarah.e.wright@charter.com

1

EXHIBIT C

| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, STATE OF COLORADO<br>7325 S. Potomac St., #100<br>Centennial, Colorado 80112 | |
| Heather Spagnolia,<br><br>　　　　　Plaintiff<br><br>v.<br><br>Charter Communications, Inc., Brian Tritz, and Shannon Chapman.<br><br>　　　　　Defendants. | ▲COURT USE ONLY ▲<br>―――――――――――――― |
| *Attorney for Defendants.*<br>Jon J. Olafson, Atty. Reg. No.: 43504<br>LEWIS BRISBOIS BISGAARD & SMITH LLP<br>1700 Lincoln Street, Suite 4000<br>Denver, Colorado 80203<br>Phone:　　303.861.7760<br>Fax:　　　303.861.7767<br>E-mail:　Jon.Olafson@lewisbrisbois.com | Case Number: 2021cv30902<br><br>Courtroom: |

### NOTICE OF FILING NOTICE OF REMOVAL OF STATE ACTION TO U.S. DISTRICT COURT

COME NOW, Defendants Charter Communications, LLC, Brian Tritz, and Shannon Chapman, by and through counsel of record, Lewis Brisbois Bisgaard & Smith LLP, and hereby file this Notice of Filing Notice of Removal of State Action to U.S. District Court as follows:

Defendants filed a Notice of Removal with the United States District Court for the District of Colorado. A copy of the Notice of Removal is attached to this Notice as **Exhibit A**. Pursuant to 28 U.S.C. § 1446(d), the state court shall proceed no further unless and until this case is remanded.

EXHIBIT D

Respectfully submitted this 30th day of June, 2021.

LEWIS BRISBOIS BISGAARD & SMITH LLP
Original signature on file at Lewis Brisbois Bisgaard & Smith
LLP, pursuant to C.R.C.P. 121 § 1-26

*s/ Jon J. Olafson*
Jon J. Olafson, Atty. Reg. No. 43504
LEWIS BRISBOIS BISGAARD & SMITH LLP
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
Tel:  (303) 861.7760
Email:  Jon.Olafson@lewisbrisbois.com

*Attorney for Defendant Charter Communications, Inc.,*
*Brian Tritz, and Shannon Chapman*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of June, 2021, a true and correct copy of this **NOTICE OF FILING NOTICE OF REMOVAL OF STATE ACTION TO U.S. DISTRICT COURT** was filed and served electronically via ICCES, the Integrated Colorado Courts E-filing System, as follows:

Peter G. Friesen
Kevin P. Ahearn
Robyn Levin
LEVIN SITCOFF PC
1512 Larimer Street, Suite 650
Denver, CO 80202
pgf@levinsitcoff.com
kpa@levinsitcoff.com
rl@levinsitcoff.com

*s/  Suzanne M. Neel*
*A duly signed original is on file at the Law Offices*
*of LEWIS BRISBOIS BISGAARD & SMITH LLP*